33247. CITY OF BAINBRIDGE *v.* COX.

Decided March 8, 1951.

454

*J. C. Hale, Conger & Conger,* for plaintiff in error.
*Custer & Kirbo,* contra.

MacIntyre, P. J. ■ "If a municipal corporation has not been negligent in constructing or repairing the same, it is not liable for injuries resulting from defects in its streets when it has no actual notice thereof, or such defect has [not] existed for a sufficient length of time for notice to be inferred." Code, § 69-303.

The "defects in its streets" for which a municipal corporation may be held liable under the provisions of this Code section have been held to include objects adjacent to, and suspended over, the municipality's streets and sidewalks, the presence of which renders the use of these thoroughfares more hazardous. *Higginbotham* v. *City of Rome,* 24 *Ga. App.* 286 (101 S. E. 720);

*City of Macon* v. *Stevens,* 42 *Ga. App.* 419 (156 S. E. 718) ;
*Parker* v. *Mayor &c. of Macon,* 39 *Ga.* 725 (99 Am. D. 486) ;
*Hammock* v. *City Council of Augusta,* 83 *Ga. App.* 217 (63 S.
E. 2d, 290).

"Questions of negligence and diligence are generally for de-
termination by the jury; and where a suit is brought against a
municipality, as in the instant case, for injuries . . alleged
to have been brought about by the existence of an obstruction
in a public street of the municipality which was not shown to
have been placed there by the city, the issue of whether or not,
where no actual notice of the obstruction is shown, it had existed
for a sufficient length of time to charge the city with negligence
in failing to discover and remove the same, should be generally
left to the determination of the jury." *City of Barnesville* v.
*Sappington,* 58 *Ga. App.* 27, 29 (197 S. E. 342) ; *City of Rome*
v. *Brinkley,* 54 *Ga. App.* 391 (2) (187 S. E. 911) ; *City of Dal-
ton* v. *Joyce,* 70 *Ga. App.* 557 (29 S. E. 2d, 112) ; *City of Rome*
v. *Hanson,* 58 *Ga. App.* 617 (1) (199 S. E. 329). While it is
true that a "city would not be liable for the existence of a latent
defect not discoverable by the exercise of ordinary care, it is
the well-established general rule that whether the defect was
such as the municipality should have discovered the same in the
exercise of ordinary care in keeping the streets and sidewalks
in a reasonably safe condition is a question for the jury." *City
of Rome* v. *Hanson,* supra.

It appears from the evidence that the damages sued for were
sustained when the plaintiff's wife was driving his automobile,
in which his daughter was a passenger, along Shotwell Street in
the City of Bainbridge. As they reached a point on the street
directly in front of the residence of Dr. R. F. Wheat, a limb
from a tree, located on the grass plot between the sidewalk and
the street, fell upon the automobile, severely damaging it and
injuring the plaintiff's daughter. The adequacy of the proof of
the damages is unquestioned by the defendant. The sole defense
is that the city violated no duty owed the plaintiff in failing to
discover and remove the hazard, which the tree constituted, to
traffic upon the street. The only evidence bearing upon the con-
dition of the tree is to be found in the testimony of Dr. Wheat,
who testified for the plaintiff. Briefly summarized, Dr. Wheat's

testimony, upon material matters, was: That he had lived on Shotwell Street for 19 or 20 years, and was living there on the day on which the tree in question fell. Some eight or ten years prior to this occasion he had noticed that the tree, which was not on his property, was decaying and that the city had done nothing about it, so that when a tree surgeon stopped by to see him concerning the pruning of his pecan trees, Dr. Wheat told him about the tree, that it looked like it was decaying where the limbs came together, and asked him what he thought about taking the tree down. The tree surgeon advised Dr. Wheat that the tree was a good one and that he could trim out the decayed portions, fill them with cement, and save the tree. Dr. Wheat engaged the tree surgeon to perform the necessary work on the tree, and this was done during the daytime when anyone could have observed his working on the tree. This work required about a day and one-half of the tree surgeon's time. One of the longest limbs of the tree went right back toward Dr. Wheat's house, and one limb extended in a northeasterly direction, and one limb extended in a northwesterly direction. The two latter limbs hung over the street. On either one or two of these limbs, Dr. Wheat had a one-half or one-third inch wire cable installed to "bolster up" the limbs that hung over the street. Additional work was performed on the tree some four or five years prior to the tree's falling. The limb which extended toward the doctor's house was dying on the end, and eight or ten feet of that was removed; and a limb which went straight up was dead, and this was removed. After this latter work was done, the limbs which had been bolstered up with cable were still supported and it was noticeable to anyone passing along the street. Dr. Wheat also testified that Shotwell was a thickly populated and much-traveled street. Dr. Wheat also testified that he was surprised that the tree had fallen because he thought "it was fairly safe." He had never asked the city to cut the tree down, and the first knowledge he had that the city was taking trees down was when his brother-in-law had had a tree cut down about a month prior to the falling of the tree in question. He passed the tree every day and thought it was safe, and guessed that anyone making a casual inspection of the tree would have thought it safe and that, if a street man passed

there and made a casual inspection, he supposed he would have thought it safe. The tree which the city took down for the doctor's brother-in-law was about 125 feet from the tree which fell, and it was fairly easily seen from the point where his brother-in-law's tree was. There was another dead limb in the tree at the time half of the tree fell, which would have been a bit difficult to see, but anyone noticing could see it. The rotten limb did not fall in the street, but it fell at the same time the limb fell in the tree and landed "kinder on the sidewalk."

Mrs. Cox, the plaintiff's wife, testified that, although it had been raining on the day on which the tree fell, it had stopped when the tree fell and the wind was not blowing at that time.

The plaintiff introduced in evidence a photograph, taken some six or eight days after the tree had fallen, which counsel for the defendant states in his brief "clearly [showed] the rotten condition of the tree trunk on the inside of the trunk."

From this evidence we think the jury was authorized to find that the tree had, over a period of years, gradually decayed to a point where its presence constituted a hazard to persons traveling the street and sidewalk at that point by reason of the ever-present danger of its falling. The jury was also authorized to find that this condition of the tree had existed for such a period of time that the city in the exercise of ordinary care should have discovered and removed this hazard to the users of the street and sidewalk. The fact that Dr. Wheat thought the tree safe and supposed or guessed that one passing on the street would think it safe does not alter the situation. See, in that connection, *Wilson* v. *City of Atlanta*, 63 *Ga.* 291 (2). Nor would the fact that the city had no employee whose duty it was to inspect trees bordering its streets relieve the city of its statutory duty to maintain its streets and sidewalks in a reasonably safe condition for use by the public. Under the principles of law which we have stated above and the authorized findings of the jury, the verdict for the plaintiff was authorized and the court did not err in overruling the motion for a new trial on the general grounds.

■ In the only special ground the defendant contends that the court erred in allowing the plaintiff to introduce in evidence a photograph of the trunk of the tree from which the limb fell

upon the plaintiff's automobile. The defendant contends that the photograph "was taken six or eight days after the wreck and showed a portion of the tree that was still standing at that time." Objection was made by the defendant that the picture was inadmissible because it had not been properly identified as to time, in that it was not a true representation of the tree as it appeared immediately before and immediately after the accident, that it was highly prejudicial to the defendant, and that "the court admitted the picture 'as showing the circumstances as to the condition of the tree six or eight days afterwards.'"

Under the plaintiff's theory of his right to recover, the tree had reached such a degree of decay that it constituted a hazard to those using the street and sidewalk at that point, and the city, in the exercise of ordinary care in keeping its streets and sidewalks in a reasonably safe condition for travel, should have discovered this decayed, and hence dangerous, condition and had the tree removed. While a photograph of the tree, taken prior to the accident, would, perhaps, have shed a more accurate light upon the question of whether, under the circumstances, the city should, in the exercise of ordinary care, have discovered the decayed condition of the tree, so far as the record shows no such photograph is extant. The photograph introduced, however, although taken six or eight days after the tree fell, revealed that the trunk of the tree had reached an advanced stage of decay. The inside of the trunk had decayed and the tree was almost hollow. From this the jury could readily infer the condition of the tree, so far as the decayed condition was concerned, prior to its falling. It is a matter of common knowledge that the processes of decay in woods do not operate so rapidly that the decayed condition of the tree could have been materially altered by the processes of decay in a space of six or eight days. The photograph threw light upon a material issue in the case, the decayed condition of the tree only six or eight days after the tree fell, from which the jury might infer that the tree was in an advanced stage of decay when it fell; and this, taken in connection with the other circumstances, bore directly upon the question of whether the city had exercised ordinary care in failing to discover and remove the tree. The court did not err in admitting the photograph in evidence for

any reason assigned in this special ground. See *Georgia Power Co.* v. *Gillespie,* 48 *Ga. App.* 688 (173 S. E. 755); *City of Thomasville* v. *Crowell,* 22 *Ga. App.* 383 (4) (96 S. E. 335); *Southern Ry. Company* v. *Lunsford,* 57 *Ga. App.* 53, 63 (194 S. E. 602). This ground of the motion for a new trial is without merit.

The court did not err in overruling the motion for a new trial. *Judgment affirmed. Gardner and Townsend, JJ., concur.*